UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| MARY ANN BAUMBACH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-851 |
| | ) | |
| v. | ) | Honorable Phillip J. Green |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB). On May 4, 2007, plaintiff filed her application for DIB benefits, alleging a May 26, 2006 onset of disability. (A.R. 193-96). Her claim was denied on initial review.[1] On November 14, 2011, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 45-86). On December 29, 2011, the ALJ issued her decision finding that plaintiff was not disabled. (A.R. 16-26). On June 7, 2013, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States

---

[1] On April 22, 2011, the Appeals Council vacated a decision by a different ALJ. (A.R. 126-27). No discussion of the vacated decision (A.R. 112-19) is necessary.

magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 13). Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ "discredited the Plaintiff's testimony without properly weighing the factors laid out in SSR 96-7p when she found that Plaintiff could walk, stand or sit for a period each during an 8 hour shift."

2. "The RFC found by the ALJ did not include the functional limitations resulting from one or more 'severe impairments.' So the hypothetical question relied on by the ALJ did not include all of the Plaintiff's limitations as credibly established by the record. And this is reversible error under *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 (6th Cir. 2004), and *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779 (6th Cir. 2009)."

3. "Only one out of 1600 administratively noticed occupations at the light level remained for a person with Ms. Baumbach's RFC. This is a substantial reduction of the light occupational base and therefore requires a finding of disabled as of her 50th birthday."

(Statement of Errors, Plf. Brief at 2, docket # 14). The Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v.*

*Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from May 26, 2006, through the date of the ALJ's decision. (A.R. 18). Plaintiff had not engaged in substantial gainful activity on or after May 26, 2006. (A.R. 18). Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine post surgeries and headaches, degenerative knees, obesity, bilateral occipital neuralgia, and left shoulder rotator cuff

disruption. (A.R. 19). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently. She can sit and stand/walk for up to 6 hours each in an 8-hour workday. She can occasionally climb stairs and ramps, but can never climb ropes, ladders or scaffolds. She can occasionally stoop, kneel, crouch and crawl. She can engage in less than frequent bilateral overhead reaching, but cannot engage in constant rotation of the neck. She cannot engage in constant use of foot controls or constant pivoting. She cannot walk on uneven ground. Further, she should avoid concentrated exposure to vibration, hazards of heights and cold temperature extremes. Additionally, she is limited to unskilled work that can be learned in 30 days or less.

(A.R. 19-20). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (A.R. 20-24). The ALJ found that plaintiff was unable to perform any past relevant work. (A.R. 24). Plaintiff was 47-years old as of her alleged onset of disability and was classified as a younger individual through April 3, 2009. On and after April 4, 2009, plaintiff was classified as an individual closely approaching advanced age. (A.R.25). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 25). The transferability of job skills was not material to a disability determination. (A.R. 25). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 2,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 82-85). The ALJ found that this constituted a significant number of jobs. Using Rules 202.20 and 202.13 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 25-26).

**1.**

Plaintiff argues that the ALJ "discredited the Plaintiff's testimony without properly weighing the factors laid out in SSR 96-7p when she found that Plaintiff could walk, stand or sit for a period of six hours each during an 8 hour shift." (Plf. Brief at 6). Specifically, she argues that the ALJ failed to "properly consider" the seven listed factors in connection with plaintiff's testimony claiming (1) that she had to "nap every day after getting her kids off to school due to pain and inability to sleep during the night," (2) that she had daily headaches, that were sometimes so bad that they caused her to vomit, and (3) that she experienced pain and swelling in her legs from varicose veins. (Plf. Brief at 6-9).

SSR 96-7p is a social security ruling addressing the process for assessing the credibility of a claimant's statements regarding his or her symptoms. *See Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (SSA July 2, 1996) (reprinted at 1996 WL 374186). "Social Security Rulings do not have the force and effect of law, 'but are binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Commissioner*, 628 F.3d 269, 272 n. 1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)). The Sixth Circuit has "refrained from ruling whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but assume[s] that they are." *Ferguson*, 628 F.3d at 272 n. 1. In addition to the objective evidence, the ALJ is to consider the following factors when assessing the credibility of a claimant's statements regarding her symptoms:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1996 WL 374186 at * 3. Under SSR 96-7p the ALJ is required to "consider" the seven-listed factors, but there is no requirement that the ALJ discuss every factor. *See White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *see also Coleman v. Astrue*, No. 2:09-cv-36, 2010 WL 4094299, at * 15 (M.D. Tenn. Oct. 18, 2010) ("There is no requirement [ ] that the ALJ expressly discuss each listed factor."); *Roberts v. Astrue*, No. 1:09-cv-1518, 2010 WL 2342492, at * 11 (N.D. Ohio June 9, 2010) ("[T]he ALJ need not analyze all seven factors contained in SSR 96-7p to comply with the regulations."). SSR 96-7p sets forth a list of factors for the ALJ to consider in addressing the claimant's credibility. *See White v. Commissioner*, 572 F.3d at 287; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 417 (6th Cir. 2011); *Parsons v. Astrue*, No. 1:09-cv-2695, 2011 WL 887618, at * 6 (N.D. Ohio Feb. 17, 2011) ("The ALJ conducted the appropriate analysis pursuant to SSR 96-7p, although not articulated in the manner Plaintiff would prefer."). The ALJ's discussion of plaintiff's credibility began with the relevant regulations and social security rulings,

including SSR 96-7p. (A.R. 24). The ALJ's reference to SSR 96-7p indicates that she "considered" all the ruling's factors. *Brown v. Commissioner*, No. 1:10-cv-705, 2012 WL 951556, at * 5 (W.D. Mich. Feb 27, 2012).

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments was not fully credible, including her testimony claiming that she required a nap every day, had daily headaches that were sometimes so bad that they caused her to vomit, and experienced pain and swelling in her legs from varicose veins:

> The claimant is a 52-year old individual who is alleging disability as the result of a neck injury resulting in headaches and pain, left shoulder pain and knee pain. At the hearing, the claimant alleged that she has a history of neck problems and initially underwent cervical fusion surgery in 1995. The surgery was generally unsuccessful, she confessed that she went back to work until 2006, at which time she quit working due to increasing pain in her neck. She also alleged that she experienced some symptoms in her arms, hands and shoulders along with frequent headaches. Prior to that, she alleged she was able to work due to workplace accommodations that allowed her to sit, stand, and move around throughout the workday.
>
> Thereafter, she underwent a second cervical fusion in January 2007, and admitted that she initially began to feel better. Following surgery, she wore a neck brace and cervical soft collar which limited her ability to move her neck. Thereafter, many of her symptoms allegedly returned and the claimant testified that she continues to experience spasms in her neck and has difficulty sleeping. While she tried sleeping pills, they made her dizzy. As such, she relies on Vicodin and Flexeril and uses heat and daily ice in an attempt to alleviate her symptoms. Although the claimant initially testified that her headaches and associated nausea had improved since undergoing surgery in 2007, she later alleged that she experiences headaches daily. Further, she reported that on occasion, her headaches are so intense that they cause her to vomit.
>
> At the suggestion of her doctor, the claimant underwent breast reduction surgery in December 2009 but testified that it did not relieve her symptoms. She also testified that she has knee pain, which makes it difficult for her to walk, especially on uneven surfaces. In

addition, she alleged that her neck and upper extremity pain would limit her ability to lift and would prevent her from showing up at work five days a week.

In terms of her activities of daily living, the claimant reported that she generally has no problems tending to her personal needs (Exhibit 4E). She also admitted that she cares for her children, although she alleged that they, along with her husband, frequently assist her with the household chores. While she testified that she was unable to lift items, she did admit that she does some housework and is able to do laundry. The claimant also admitted that she drives daily and grocery shops with her family. In addition, the claimant confessed that she has a garden, but alleged that she did not do much to maintain it this year other than pick a few items and walk around it.

Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity.

* * *

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. In that regard, the objective medical evidence does not support the claimant's alleged functional limitations.

For example, the claimant testified that she had symptoms that affect her ability to use her arms which resulted in the frequent breaking of dishes as she alleged she was unable to feel what she was grasping. However, the EMG testing was negative and the results of the IME indicated that she was neurologically intact and demonstrated normal grip strength (Exhibits 3F/6; 9F/2). Further, recent medical records do not document related ongoing complaints. Additionally, while the claimant frequently reported symptoms related to headaches, the treatment records do not indicate any of the associated nausea the claimant described at the hearing and do not document any additional form of treatment. As for her complaints of leg swelling and throbbing, the claimant admitted that the surgery helped to relieve her symptoms and treatment records do not indicate any subsequent complaints. And while the claimant alleged that she has fallen for no apparent reason while walking, she did not report any of these episodes to her treating providers, which suggests that these isolated incidents were not of major concern. Thus, based on the foregoing, more weight is afforded to the objective medical evidence, which clearly supports the aforementioned residual functional capacity assessment, than the claimant's allegations concerning disability.

In summary, after careful consideration of the entire record, while giving reasonable credit to the claimant's testimony and findings of her treating and examining physicians, I conclude

-9-

> that neither the objective evidence of record, nor the claimant's own statements and activities supports a conclusion that she is unable to perform any substantial gainful activity.

(A.R. 20-24). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's explanation of her factual finding regarding plaintiff's credibility is more than sufficient and is supported by more than substantial evidence.

**2.**

Plaintiff's next claim of error is as follows:

> The RFC found by the ALJ did not include the functional limitations resulting from one or more 'severe impairments.' So the hypothetical question relied on by the ALJ did not include all of the Plaintiff's limitations as credibly established by the record. And this is reversible error under *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 (6th Cir. 2004), and *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779 (6th Cir. 2009).

(Statement of Errors, ¶ II, Plf. Brief at 2, docket # 14; *see also* Reply Brief at 1-2, docket # 16). The body of plaintiff's brief and reply brief corresponding to the alleged error contains no discussion or analysis of the *Foster* or *Webb* decisions. (Plf. Brief at 9-11). Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014).

Even assuming that plaintiff did not waive this issue, it is meritless. Plaintiff argues that the Commissioner's decision must be overturned because headaches and bilateral occipital neuralgia were included in the list of her severe impairments, but the ALJ's RFC finding did not include functional limitations based on those impairments. Plaintiff's argument improperly

collapses multiple steps of the sequential analysis.[2] The finding of a severe impairment at step 2 of the sequential analysis is a threshold determination. The finding of a single severe impairment is sufficient to require continuation of the sequential analysis. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis that plaintiff had severe impairments.[3] (A.R. 19). The Sixth Circuit considers the step two severity regulation as a "*de minimis* hurdle" intended to "screen out totally meritless claims." *Nejat v. Commissioner*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) and *Farris v. Secretary of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)); *see also Corley v. Commissioner*, No. 98-3785, 1999 WL 970306, at * 1 (6th Cir. Oct. 13, 1999) ("The ALJ did not err in finding that a severe impairment can exist without finding that a significant limitation and disability exist."). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."

---

[2] "Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

[3] The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

*Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007) (citation and internal quotation omitted).

RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1); *Griffeth v. Commissioner*, 217 F. App'x at 429. The administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found that plaintiff retained the RFC for a limited range of light work. (A.R. 19-20). The ALJ carefully considered the evidence related to plaintiff's headaches, bilateral occipital neuralgia, and medications. (A.R. 20-24). Plaintiff has not shown that the restrictions that the ALJ included in her factual finding regarding plaintiff's RFC, such as limiting plaintiff to unskilled work that could be learned in 30 days or less, and that required less than frequent overhead reaching and did not involve constant rotation of the neck, failed to adequately take into account plaintiff's functional limitations stemming from the aforementioned impairments.

A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's testimony was not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Parks v. Social Security Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions [ ] need only incorporate those limitations which the ALJ has accepted as credible."); *Carrelli v. Commissioner*, 390 F. App'x

429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.' ") (quoting *Casey*, 987 F.2d at 1235). The ALJ's hypothetical question included all the limitations she found to be credible.

**3.**

Plaintiff argues that the ALJ should have used Rule 201.12 to direct a finding that plaintiff was disabled as of April 4, 2009, her 50th birthday. (Plf. Brief at 14-15; Reply Brief at 2-5). Plaintiff attempts to support this assertion with a highly convoluted argument invoking SSR 83-10, 83-12, 83-14, and the Ninth Circuit's decision in *Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006). (Plf. Brief at 11-15; Reply Brief at 2-5). The court finds no basis for disturbing the Commissioner's decision.

Rule 201.12 of the Medical-Vocational Guidelines did not apply to plaintiff's claim. The ALJ found that plaintiff was capable of performing a limited range of light work. (A.R. 19-20). The relevant Rule when plaintiff reached age 50 was Rule 202.13. The ALJ used Rule 202.13 as a framework, and when this rule is used as a framework, it supports the ALJ's finding that plaintiff was not disabled. (A.R. 25).

SSR 83-12 did not apply to plaintiff's claim because she had non-exertional limitations. (A.R. 19). SSR 83-12 clarified how to use the Medical-Vocational Guidelines "as a framework for adjudicating claims in which an individual *has only exertional limitations, **and** no specific rule applies because the individual's residual functional capacity (RFC) does not coincide with any one of the defined exertional ranges of work.*" *Titles II and XVI: Capability to do Other*

*Work – The Medical-Vocational Guidelines as a Framework for Evaluating Exertional Limitations within a Range of Work or Between Ranges of Work*, SSR 83-12 (SSA 1983) (reprinted at 1983 WL 31253, at * 1) (emphasis added); *see Bumgardner v. Secretary of Health & Human Servs.*, No. 90-5241, 1990 WL 163605, at * 5 (6th Cir. Oct. 24, 1990) ("This ruling expressly states that its purpose is to clarify policies where the individual has *only* exertional limitations."); *Avery v. Astrue*, No. 1:11-cv-848, 2012 WL 6861207, at * 5 (S.D. Ohio Dec. 12 , 2012) (same).

SSR 83-10 clarifies how the Medical-Vocational Guidelines address the issue of capability to do other work. *Titles II and XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2*, SSR 83-10 (SSA 1983) (reprinted at 1983 WL 31251, at * 1). "The Grids only take account of a claimant's 'exertional' impairments, *i.e.*, impairments that "affect [a claimant's] ability to meet the strength demands of jobs." *Collins v. Commissioner*, 357 F. App'x 663, 670 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1569a(b)). Thus, "where a claimant suffers from an impairment limiting only h[er] strength (*i.e*., exertional limitations), the SSA can satisfy its burden through reference to the grids." *Kyle v. Commissioner*, 609 F.3d 847, 855 (6th Cir. 2010); *Cf. Jordan v. Commissioner*, 548 F.3d 417, 424 (6th Cir. 2008) ("The SSA may not rely on the grids alone to meet its step five burden where the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level."). SSR 83-10 states: "In Appendix 2, work in the national economy is classified exertionally as sedentary, light, medium, heavy or very heavy."  1983 WL 31251, at * 1. "A final requirement in determining an occupational base under the rules within a table is that the RFC reflects no impairment-caused limitation affecting performance of other than exertional activities, *i.e.*, no nonexertional limitation.  Thus the only impairment-caused limitations considered in each rule are

exertional limitations." *Id.* at 3. SSR 83-10 contains a glossary "to be used when an individual's capability to do other work is determined under the provisions of Appendix 2 of the regulations." 1983 WL 31251, at * 4. The glossary provides a definition of "occupational base" as that term is used in the grids:

> *Occupational Base*. The number of occupations, as presented by RFC, that an individual is capable of performing. These "base" occupations are unskilled in terms of complexity. The regulations take notice of approximately 2,500 medium, light and sedentary occupations; 1600 light an sedentary occupations; and 200 sedentary occupations. Each occupation represents numerous jobs in the national economy.

*Id.* at 5. Absolutely nothing in SSR 83-10 supports plaintiff's argument that the Commissioner cannot satisfy her burden at Step 5 of the sequential analysis unless the VE's testimony identifies a significant number of "occupations," rather than a significant number of jobs. The Ninth Circuit's decision in *Lounsburry* never established such a rule.[4] Further, *Lounsburry* has never been cited in any decision of the United States Court of Appeals for the Sixth Circuit. The law in the Sixth Circuit is that a VE's testimony must provide evidence of a significant number of jobs, not

---

[4]In *Lounsburry*, in light of the claimant's age, exertional limitation, education, and transferability of work skills, the grids directed a finding that she was disabled. 468 F.3d at 1116-18. The error requiring reversal was that "the ALJ declined to apply the grids, except as an advisory framework, because Lounsburry's residual functional capacity was further reduced by her severe, non-exertional, postural limitations. This was error; the ALJ should have first inquired whether Lounsburry was disabled under the grids on the basis of her exertional limitations alone." *Id.* at 1116. In addition, the ALJ in *Lounsburry* erred in relying on VE testimony where the grid rule directed a finding of disability. *Id.* Further, the Ninth Circuit's *Lounsburry*, decision turned on the question of whether, under Rule 202.00(c), Ms. Lounsburry, an individual of advanced age with transferable work skills, had skills "not readily transferable to a significant range of semi-skilled or skilled work." 468 F.3d at 1117 (quoting Rule 202.00(c)). The Ninth Circuit held: "[T]he term 'work' under Rule 202.00(c) means distinct *occupations*, and 'significant numbers [of jobs]' is no substitute and cannot satisfy the plain language of Rule 202.00(c) requiring a 'significant *range* of work.'" *Id.* at 1117.

This lawsuit does not involve any application of Rule 202.00(c). Plaintiff was not an individual of advanced age and the transferability of her work skills was not an issue.

occupations.  *See Kyle v. Commissioner*, 609 F.3d at 855; *see also Griffith v. Commissioner*, 582 F. App'x 555, 559  (6th Cir. 2014).

The "proper Social Security Ruling to refer to in this case is 83-14, which clarifies policies regarding how the grids provide a framework for decisions involving persons who have both a severe exertional impairment and a nonexertional limitation or restriction." *Bumgardner*, 1990 WL 163605, at * 5; *see Titles II and XVI: Capability to do Other Work – The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments*, SSR 83-14 (SSA 1983) (reprinted at 1983 WL 31254).  SSR 83-14 clarifies how the grid rules provide a framework for decisions concerning persons who have both a severe exertional impairment and a nonexertional limitation or restriction.  1983 WL 31254, at * 1.  SSR 83-14 provides in relevant part as follows:

> A particular additional exertional or nonexertional limitation may have very little effect on the range of work remaining that an individual can perform. The person, therefore, comes very close to meeting a table rule which directs a conclusion of  "Not disabled."  On the other hand, an additional exertional or nonexertional limitation may substantially reduce a range of work to the extent that an individual is very close to meeting a table rule which directs a conclusion of "Disabled."
>
> Use of a vocational resource may be helpful in the evaluation of what appear to be "obvious" types of cases. In more complex situations, the assistance of a vocational resource may be necessary. . . . Vocational experts may testify for this purpose at the hearing and Appeals Council levels.

*Id.* at *3-4; *see Jordan*, 548 F.3d at 423-24.  Thus, "the general rule in this circuit that, where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform." *Jordan*, 548 F.3d at 424 (citing *Burton v. Secy of Health & Human Servs.*, 893 F.2d 821,

822 (6th Cir. 1990)). This is precisely where vocational expert testimony is appropriate. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Here, in response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 2,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 82-85). This constitutes a significant number of jobs. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 is a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 is a significant number); *Martin v. Commissioner,* 170 F. App'x 369, 375 (6th Cir. 2006) (870 jobs is a significant number); *see also Nejat v. Commissioner*, 359 F. App'x at 579 (collecting cases holding that as few as 500 jobs constituted a significant number). It is well settled that a VE's opinion, given in response to an accurate hypothetical, is sufficient to satisfy the substantial evidence test.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:   January 12, 2015            /s/  Phillip J. Green
                                    United States Magistrate Judge